**In re the Marriage of Hope M. SURRETT, Petitioner, Respondent,**

v.

**Louis S. SURRETT, Jr., Appellant.**

**No. C4–86–600.**

Court of Appeals of Minnesota.

Dec. 2, 1986.

Review Denied Jan. 16, 1987.

Emmett D. Dowdal, White Bear Lake, for respondent.

Robert F. Mannella, Gregory J. Hellings, Babcock, Locher, Neilson & Mannella, Anoka, for appellant.

Considered and decided by CRIPPEN, P.J., LANSING and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

The dissolution proceeding of Hope and Louis Surrett came to trial on October 10, 1985. The court found that Hope Surrett, respondent was the primary caretaker of the parties' six-year-old daughter Jessica Surrett. The court awarded the permanent care and custody of the child to respondent on November 5, 1985. Appellant Louis Surrett moved for amended findings and moved for judgment notwithstanding the verdict or a new trial. Appellant alleged that respondent was unfit to be the custodial parent of the parties' minor child. Respondent countered by moving for an order denying appellant's motion and for an award of attorney's fees. She claimed that appellant was using excessive court procedures as an economic lever against her to force concession of custody. Both parties' motions were denied and Louis Surrett appeals. Additionally, respondent requests attorney fees on appeal. We affirm.

## FACTS

The primary issue between the parties was the custody of Jessica Surrett. Jessica was born to the parties on June 17, 1979. She was six-years-old at the time of the parties' dissolution.

At trial both parties testified on their own behalf as to their respective relationships with the child. Significantly, other additional testimony was presented as to the issue of custody. Benjamin Ezaki, the man with whom respondent and child were then living, testified. The expert testimony of two psychologists, Dr. Chris Meadows and Paula Jo Villegas, was also presented.

Benjamin Ezaki, with whom respondent was living, testified that he was divorced and not presently married. He indicated that he had made a long term commitment to respondent. Ezaki stated that he had been convicted of forgery and uttering in

May of 1981. This conviction grew out of a disputed debt with a business associate. Ezaki was also convicted of indecent conduct in 1983 when he was arrested for masturbating in an adult theatre. Ezaki additionally testified that on two occasions, when he and respondent were on a vacation in the Wisconsin Dells, the child Jessica slept in the same room as they did. With respect to Ezaki, respondent testified that on the weekends when she worked he would take care of Jessica.

Dr. Chris Meadows, a consulting psychologist, testified that he interviewed appellant, respondent, Jessica and Ezaki. Meadows gave a family relations test to Jessica and found that she "feels very strongly bonded to her mother and that she depends on her mother more than her father to meet * * * basic day by day caring needs." Although Jessica indicated to Meadows that she desired to live with both of her parents, she also stated that given a choice she would prefer to live with respondent. As a result of Meadows' interviews with all the persons involved and his clinical and personality assessments of both appellant and respondent, Meadows came to the opinion that the best interests of the child would be served by a custody award to respondent.

Paula Jo Villegas, a psychologist employed by the county, had prepared an independent custody evaluation for the trial court. She testified that the impact the change in environment and the relationship between respondent and Ezaki will have on Jessica can not yet be determined, but at present there were no signs of any negative results. Villegas considered information on appellant, respondent, Jessica and Ezaki in recommending that physical custody of Jessica be awarded to respondent. Villegas found that "Jessica is more emotionally bonded to her mother [and that] considering Jessica's personality overall, she would better adjust to the life style of Mrs. Surrett rather than Mr. Surrett."

The court found that from Jessica's birth respondent Hope Surrett had been Jessica's primary caretaker, being that parent responsible for attending to her everyday physical and emotional needs. It also found that while each of the parties were fit and proper people to have the permanent care, custody and control of their minor child, the child's best interests and welfare would be served if respondent, as that child's primary caretaker, was awarded custody of the child subject to liberal visitation rights of appellant. Regarding Benjamin Ezaki's fitness to be involved in Jessica's care, the court noted Ezaki's convictions for forgery and uttering in 1981 and indecent conduct in 1983. The court found that "[w]hile the Court is not without concern regarding Mr. Ezaki's criminal record, it does not find sufficient evidence, either in his criminal record or in reports of his family therapist, to conclude that he is violent, abusive, or in any identifiable way, a physical or emotional danger to Jessica."

Appellant moved the trial court to amend its finding of fact, conclusions of law and order for judgment and for judgment notwithstanding the verdict or a new trial. The trial court's finding that respondent was the child's primary caretaker was not assailed. Appellant argued that regardless of respondent's status as primary caretaker, respondent was unfit to be Jessica's custodial parent. Several incidents of unfitness, some of them alleged to be newly discovered, were cited as the basis of this claim. Specifically enumerated were that Ezaki, a nonrelative male, was living with respondent, that Ezaki had been convicted of the felony of forgery and uttering in 1981 and indecent conduct in 1983, that Ezaki frequently alone cares for Jessica when respondent is absent, that respondent has had occasion to allow Jessica to be placed in the sole care of a fourth grader, and that respondent has failed to tell appellant of a school conference concerning Jessica in violation of the dissolution judgment.

Respondent countered by moving the trial court for an order denying appellant's motion and for attorney fees. Respondent argues attorney fees should be assessed against appellant because he has used ex-

cessive court procedures to drive her to bankruptcy in an attempt to use this economic lever as a means for obtaining custody of Jessica. The trial court summarily denied both parties motions and this appeal followed.

## ISSUE

1. Was there sufficient evidence to support the trial court's finding that respondent was fit to be the custodial parent of the parties minor child?

## ANALYSIS

1. Appellant claims the trial court's finding that respondent was fit to be the custodial parent of the parties' minor child is clearly erroneous and unsupported by the evidence. The evidence of unfitness presented at trial and the alleged newly discovered evidence presented in appellant's subsequent motion for relief form the foundation upon which appellant's claim is based.

■ Appellate review of a custody determination is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). In a custody dispute between both parents, involving a child too young to express a preference for a particular parent, the best interests of the child mandate that custody be awarded to the primary caretaker "absent a showing that that parent is unfit to be the custodian." *Id.* at 713. For a primary parent to be found unfit there must be a showing that "the child's physical or emotional health is likely to be endangered or impaired by being placed in the primary parent's custody." *Id.* at 714.

■ In view of the limited standard of review and the strong showing necessary to find unfitness mandated by *Pikula,* we find the trial court did not err in finding that respondent was fit to be the custodial parent of the parties' minor child.

The main thrust of appellant's argument is that respondent should have been found to be unfit because she was living out of wedlock with Benjamin Ezaki. Appellant contends that Ezaki's pervasive presence in the operations of respondent's household has put the child Jessica in peril. Ezaki's convictions for forgery and uttering in 1981 and indecent conduct in 1983 are cited as proof of Ezaki's dangerousness. Appellant argues that this case is analogous to the situation the supreme court faced in *Simonson v. Simonson,* 292 N.W.2d 12 (Minn.1980) and that *Simonson* should be dispositive.

In *Simonson* the supreme court reversed the trial court's award of custody to the mother of the child. The "narrow issue" before the court was "whether or not it is in the best interests of a minor child to be in the custody of a mother who is cohabitating with a person who has a record of sexually molesting children." *Id.* at 13. The record in *Simonson* disclosed that the man with whom the mother was cohabitating had been convicted of six felonies since 1958, one or more of which were for carnal knowledge, had served time in prison for one of the felonies, and was accused by his first wife of sexually molesting his own daughter as well as a niece. *Id.* Because the presence of this man posed a danger to the physical and emotional health of the minor child the court reversed the award of custody to the child's mother. *Id.*

*Simonson* does not control the outcome here. While Ezaki's presence in respondent's household is relevant to determination of custody, the record in the present case does not contain the same heinous indictment of Ezaki as was present in *Simonson.* In this case Ezaki and information concerning his criminal record were before two psychologists as they attempted to make a custody evaluation. Neither found that Ezaki posed any kind of threat to the well being of Jessica.

Appellant also argues that in addition to her relationship with Ezaki, respondent has exhibited her unfitness to have custody by allegedly leaving the child in the care of a fourth grader and by not informing appel-

lant of a school conference, in violation of the dissolution decree.

The trial court weighed all this evidence. The court found that although Ezaki's criminal record was a matter of concern, there was insufficient evidence to establish that he constituted a physical or emotional threat to Jessica. Additionally, it seems the court found respondent's other lapses to be relatively minor and not determinative on the issue of custody. Thus respondent, as Jessica's primary caretaker, was found fit to be awarded custody of Jessica. The trial court did not abuse its discretion in so holding. In view of the trial court's clear findings and the little basis justifying appeal we award respondent $400 attorneys fees.

## DECISION

There was sufficient evidence to support the trial court's finding that respondent was fit to be the custodial parent of the parties' minor child. Respondent is awarded $400 attorneys fees for this appeal.

Affirmed.